**MAKING A RESIDENCE DISTRICT " DRY " BY PETITION.**

Common Pleas Court of Cuyahoga County.

In re Petition to Prohibit the Sale of Intoxicating Liquors as a Beverage in a Certain Residence District in a Municipal Corporation.

Decided, December 1, 1913.

*Intoxicating Liquors—Local Option in Residence Districts in Municipal Corporations—Making Territory "Dry" by Petition—Technical Irregularities—Description and Map of the Territory Proposed— Sections 6140 et seq.*

1. Where a petition to prohibit the sale of intoxicating liquors in a clearly residence district within a municipality, signed by a majority of the legal voters of such district, is declared insufficient because of errors or irregularities of a technical character, another petition covering the same and additional contiguous territory

may be filed without waiting until two years have elapsed; and it is probable that a second petition could be filed at any time during the two year period in a case where the first petition was declared insufficient for lack of the requisite number of legal signatures.

2.  If a petition appears on its face to contain the requisite number of legal signatures, the *prima facie* thus afforded of its sufficiency in that respect must be rebutted or overcome by the contestants or objection thereto on that ground will not lie.

3.  The territory included in the petition must be accurately described by existing well known lines or by lines which can be easily ascertained, in order that criminal jurisdiction may be established in the event the petition is declared sufficient; but the map need not be mathematically accurate and is not open to objection if it shows substantially the territory covered and the saloons to be affected should the district be declared "dry."

4.  The word "block" as used in Section 6069, General Code, means "the territory bounded by four well recognized adjacent streets in a residence district," and where it is shown that one of the streets which it is claimed bounds a block has been abandoned, objection does not lie.

*Charles M. Earhart,* for petitioners.
*C. L. Shaw,* contra.

FORAN, J.

This is a petition to prohibit the sale of intoxicating liquors in a certain residential district in the city of Cleveland. An answer has been filed by the contestants, setting up five separate and distinct defenses. Under a recent decision of our Supreme Court, this case is the same as any other action in court, and a reply should be filed to this answer by the petitioners if they desire to make a traversable issue. Leave to file such a reply will be granted.

During argument it was claimed by counsel for the contestants that local option laws of Ohio are confiscatory in their nature, and should be strictly construed against petitioners. The petitioners, on the other hand, claim that saloons, especially disorderly saloons, are confiscatory so far as residence property is concerned. The tendency in all cities is to segregate business in centers, away from residence property; and if one of these business centers grows up where it is surrounded by residence

property, that property, for residence purposes, is necessarily depreciated in value, and for the evident reason that citizens naturally desire to avoid the noise and confusion incident to business centers. It may be said generally that business of any kind, to some extent depreciates residence property, in its immediate vicinity, for residence purposes. We think a saloon, or the traffic in intoxicating liquors, is a business the same as any other kind of commercial enterprise, and should conform to the general tendency and be segregated in the business centers, and should not be, ordinarily, permitted in strictly residence districts.

The contestants in this case claim, first, that the petition should be held insufficient, for the reason that the territory covered by the petition now before the court was included in a petition which was held insufficient by a judge of this court April 16, 1913; the contention being, that after a petition to prohibit the sale of intoxicating liquors has been held insufficient by a judge or a mayor, another petition to prohibit such sale in the same territory can not be again filed until after the lapse of two years.

It is quite clear that when a petition to prohibit the sale of intoxicating liquors in a residence district is for the first time filed, and at that time is held by the court or mayor to be sufficient, a petition to permit the sale of intoxicating liquors in the same district can not be filed until after the lapse of at least two years.

Section 6142, General Code, is clear and explicit upon this point. If a petition to prohibit the sale is held sufficient, the territory or district remains dry for two years, and therefore until a petition to permit the sale of intoxicating liquors in such district has been held sufficient, and if so held sufficient, the district or territory then remains wet for two years, when another petition to prohibit the sale may be filed.

Section 6160, General Code, is equally clear and explicit upon this point. There can be no question but that, after a petition has been held sufficient, whether it be to prohibit or permit the sale of intoxicating liquors, the status established by holding the petition sufficient remains in any event for two years, and

can not be disturbed during that period. The only exception to this clearly-defined policy of the law is that which is provided for by Section 6156, General Code, which provides that in a district where no saloons or places where intoxicating liquors exist, but in which the sale of such liquors has been prohibited by the presentation of a petition which has been held sufficient, or in a kind of district with which we are not here concerned, in such a case a petition may be filed within two years covering part or all of the territory contained in the petition first filed and held sufficient, with or without other contiguous territory.

We are not concerned with the reasons for the enactment of this section, but it will be noticed that even the exception relates to territory where a petition to prohibit has been held sufficient. The prohibition to file within two years always relates to a district or territory where and in which or concerning which a prior or former petition was held sufficient. The policy of the law is to afford citizens of residential districts an opportunity to prohibit the sale of intoxicating liquors in such districts, if they see fit for any reason to do so. Those opposed to such sale must take the initiative in all local option proceedings, whether it be by election or by petition. But as all city territory is constantly changing both with respect to the character of the population and the nature and purpose for which a given territory may be used, the law gives those in favor of the sale of intoxicating liquors an equal opportunity to be heard after two years in a district where its sale has been prohibited; that is, if the character of the district has changed, and has become to a large extent a business section, or if the population has changed in character, an opportunity is presented to the people of such district, after it has been held dry for two years, to again change its status if a majority of the district or the legal voters of the district see fit to do so. If a majority of the citizens of a residence district, as shown by the last general election, file a petition to prevent or prohibit the sale of intoxicating liquors in the district, and the petition is held insufficient, the law does not prevent or forbid them from filing another petition for that purpose within two years. In this respect we think that in declaring a residence district dry by a petition, and by election,

there is a difference. An election involves a large expense, which must be borne by the municipality itself. A large portion of the expense involved in declaring a district dry by petition is borne by the petitioners; and, besides, the formalities and procedure are entirely different. Holding a petition insufficient for reasons other than failure to have the requisite number of legal signatures, seems to be at variance with the general scope and purpose of the law. It is an exception which was undoubtedly grafted upon the law in the interest of those who are opposed to prohibiting the sale of intoxicating liquors in such districts.

· Section 6141, General Code, in effect provides, that if the mayor or judge holds that a majority of the legal voters of the district signed the petition, it shall be *prima facie* evidence that the sale is prohibited in such district; and to the same effect is Section 6143, General Code. By Section 6164, General Code, it is provided that error from the decision of the mayor or judge can not be prosecuted to the court of appeals unless the petition has been declared and held sufficient. It is clear, therefore, to the court that the manfest intendment of the statute is to confine the prohibition to file a petition within two years to those cases in which a petition has been held sufficient. It would be a manifest injustice to the citizens of a residence district to prohibit them or prevent them from filing a second petition within two years if the first petition was held insufficient because of some technical or clerical irregularity in the description of the district, or location of the saloons therein, or character of the map attached to the petition, or because the court held they had included a business block in the territory described. Surely citizens of a residence district ought to be permitted, in such case, to file another petition correcting the clerical errors or irregularities complained of. If the district is clearly residential in character, and if a majority of the legal voters therein have signed the petition, and it is declared insufficient because of errors, irregularities or mistakes of the kind indicated, they may file another petition covering or including the same and additional contiguous territory at any time after the petition has been so held insufficient for such reasons; and we are not pre-

pared to say they may not do so even if the petition is declared insufficient for want of the requisite number of legal signatures.

It would be strange indeed to find a petition to either prohibit or permit the sale of intoxicating liquors in a residence district to which a mere technical objection might not be interposed; and, no matter how immaterial such objection might be, a very plausible argument might be made in support of it, plausible and cogent enough, at least, to satisfy and ease the elastic conscience of some purely political official; and where a petition of this kind has been held insufficient on the ground of some technicality, irregularity or mistake, to hold another petition could not be filed for two years would render the law nugatory and void. In other words, it would be tantamount to holding that a judge or mayor could by judicial construction repeal a legislative enactment, for it might be impossible for practically all the legal voters of a residence district to ever prohibit the sale of intoxicating liquors therein.

The first objection will, therefore, be overruled.

The second defense or objection challenges the jurisdiction of the court, for the reason that the hearing was not had within forty days from the filing of the petition.

For reasons appearing in the record, and to which it is not necessary to refer, and because of former holdings by our courts upon this question, this objection will be overruled.

The third defense or objection is, that the petition does not contain the number of *bona fide* signatures required by law.

There is no legal evidence before the court to support this contention. The petition on its face shows *prima facie* such requisite number of signatures; and this *prima facie* evidence has not been rebutted or overcome by the contestants; therefore this objection will be overruled.

The fourth defense is, that the map attached to the petition is incorrect, and is not in conformity to law.

The evidence conclusively shows that the territory or district named in the petition is described by clearly defined lines accurately transcribed from the official surveys and official maps of the county and the official ordinances of East Cleveland, Collinwood and the city of Cleveland. At least, no evidence has

been introduced to show that these lines are not strictly accurate and correct. It is important that the territory described in the petition be accurately described by existing well known lines or lines which can be easily ascertained, as this affects the venue and criminal jurisdiction in case a petition ·to prohibit the sale of intoxicating liquors is held to be sufficient. No fault is found with the written description contained in the petition as to the boundary lines thereof, but it is insisted that this written description of the boundary lines of the district does not agree with the map, or, rather, that the map attached to the petition does not conform to the written description. We think this unimportant. Section 6146, General Code, provides that the petition shall have a map or drawing attached, showing the outlines of the district and location of all saloons within the district. · The purpose of this section is evidently to enable the signers to whom the petition is presented to see and know what territory and what saloons may be affected by their action in signing the petition. The map need not be mathematically accurate. If it shows substantially the territory affected, and shows all the saloons to be affected should the petition be held sufficient, the map will be held sufficient. The Century Dictionary defines outline as "a rough draft or first general sketch of the main features of some scheme or design the details of which can be filled in later if need be; a description of the principal features only." We think the map fulfills these requirements, and this objection will be overruled.

The fifth and last defense is, that the proposed district contains a block, as that term is defined·in the statute.

The word "block," as defined by Section 6069, General Code, means "the territory bounded by four well recognized adjacent streets in a residence district."

The evidence does not show that the block in question is so bounded or enclosed. The evidence shows that a portion of Casper avenue, one of the streets which it is claimed bounds this block, has been abandoned. On a part of one side of the alleged block there is no well-recognized and adjacent street. Therefore the objection is not well taken, as the block, to comply with the statute, must be enclosed, that is, completely surrounded by four well-recognized adjacent streets.

We might stop here, but it seems some confusion has arisen as to what is meant by the language defining a block. The words, "a city block," are so well and so generally understood to mean a square or rectangular connected mass of buildings enclosed by four streets, that it would seem superfluous to undertake to further define the term.    The words furnish their own definition. If one were to ask a ten-year old city boy what the word block means, he would smile at your simplicity, for he has been "around the block" so often that it would seem trite to ask him what the word means.

The block exception was grafted upon the local option statutes at the instance and for the benefit of those opposed to prohibiting the sale of intoxicating liquors in a residence district; and the smaller the block the better it suited their purpose, for they would have less foot frontage of commerce and business occupancy to provide or account for.    It might be difficult to find on a large area of territory bounded by avenues and streets a foot frontage of a connected mass of buildings sufficient to bring them within the exception.

An octagon or hexagon block, or an irregular salamander shaped block is rarely found in modern cities.    The word "bounded," as used in this statute, means enclosed.    If there are five or six adjacent streets around a connected mass of buildings, how can they be said to be enclosed by four of them, that is, completely enclosed?    It would take all the streets to enclose the connected mass of buildings. Suppose a connected mass of buildings is surrounded, bounded or enclosed by streets known as A, B, C, D, E and F.    Can it be said the buildings are completely enclosed by any four of these streets?    If it be said that the greater number includes the lesser number, and that hence these six streets include four streets, it may be asked, which of the four streets included in the six completely enclose the block? And when this question is asked, the fallacy of the reasoning becomes apparent at once.    When we say Ohio is bounded by the Ohio river, Lake Erie and the territory of the other states, we mean the state is completely enclosed by the waters and the lands mentioned.    If the law provided that townships, in a newly settled or open country, should be bounded by four lines, that is,

that they should be either square or rectangular, would a township having six sides, or one bounded by six lines, be a compliance with the law? There is no question here of legislative intent. The meaning of the words "bounded by four well-recognized adjacent streets" is as plain as simple English words can make it. The language does not call for judicial construction. If the language of a statute is plain and free from ambiguity, and expresses a single, definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended to convey. In other words, the statute must be given the construction the words used mean in their ordinary sense (*Black on Interpretation of Laws*, 35, 36). This rule of construction is everywhere followed by our courts, and it is the rule of construction which the court applies in this case. The province of construction is to ascertain and give effect to the intention of the Legislature, but this intent must be derived from the legislation and language used, and may not be invented by the court 82 O. S., 376, 380). If the intention can be ascertained from a reading of the statute, then such intention must be ascertained from the reading of the statute itself. If it were really necessary to inquire what the Legislature meant by the word block, it would be sufficient to say that it meant just what the words actually mean as understood generally in ordinary speech; but when the Legislature, in addition to the use of the word block, says that the block must be bounded, that is, completely enclosed, by four well-recognized adjacent streets, there is no room or necessity for construction. In the modern city, as has been said, to find a block or connected mass of buildings bounded by more than four adjacent streets would be difficult. Such so-called blocks are rarely found. If the Legislature meant four or more streets, it would have said so. It must be presumed that the members of the Legislature are men of ordinary common sense, and knew what they were doing when they enacted this section of the statute and thus defined what a block meant. Take the phrase "bounded by four well-recognized adjacent streets"; can it be said these words need judicial construction? What right has a court to read into this statute the words "or more" after the word "four"? Legisla-

tion by judicial interpretation or construction means judge or court made law, and is a menace to free institutions. It should not be tolerated; and where the language of a statute is so plain and so simple that it can be understood by any ordinary man, courts have no business to give it a construction that the language itself does not warrant.

I have no doubt but that the holding which will be made in this case is going to work a hardship upon some persons doing business in this district; but if this district contains a well-recognized business center, and I think it does, the contestants will have an opportunity to be heard in two years from now.

I think those who believe that the local option laws involve the prohibition concept are mistaken. The primary object of the legislation was to exclude saloons from purely residence districts. In municipalities where there are well-recognized business, manufacturing and commercial centers covering several blocks, or parts of blocks, there is no reason why licensed saloons should not be permitted in such centers, if confined to the business or commercial centers and conducted properly; and if not, the laws are amply sufficient to enforce the orderly operation of the business. The laws respecting this business have been very materially changed by the new Constitution and the recent legislation thereunder, and it is quite probable that local option laws will be amended and made to conform to changed conditions.

The petition is found sufficient.